Paul WEST and Mary West, husband
and wife, Plaintiffs, Appellees and
Cross–Appellants,

v.

Gary CARLSON and Jean Carlson, hus-
band and wife, Defendants, Appellants
and Cross–Appellees.

Civ. No. 890173.

Supreme Court of North Dakota.

March 27, 1990.

Wegner, Fraase, Nordeng & Johnson, Fargo, for plaintiffs, appellees and cross-appellants; argued by Mervin Nordeng.

Garaas Law Firm, Fargo, for defendants, appellants and cross-appellees; argued by Jonathan T. Garaas.

MESCHKE, Justice.

Gary and Jean Carlson appealed from a judgment awarding Paul and Mary West $93,680 plus interest for deceit and for breach of contract. The Wests cross-appealed from the court's refusal to rescind the contract. We affirm.

The Wests owned 400 acres in Cass County, North Dakota. The Carlsons owned the 26 acres and house on lot 23 in Gallatin County near Bozeman, Montana, and were purchasing the 20 adjacent acres on lot 19 by contract for deed with Homestead Land and Cattle Company. On March 25, 1985, a written agreement between the Carlsons and the Wests [Carlson–West agreement] agreed to the exchange of these properties.

Pursuant to this agreement, the Wests conveyed their 400 acres to the Carlsons in exchange for Lot 23A (Lot 23 minus the house and six acres), $60,000, and an assignment of the Carlsons' right, title and interest in a January 30, 1985 agreement with Daniell Henderson [Carlson–Henderson agreement] wherein the Carlsons sold Henderson the house and the six acres from lot 23 for $122,800 and Henderson assumed the balance of $26,500 on the Carlsons' contract for deed with Homestead for lot 19. The Carlsons' interest in the Carlson–Henderson agreement essentially consisted of receiving monthly payments from Henderson of $1,181.34 from April 1985 until April 1995 when the balance of $105,000 was due. According to the Wests, they received assurances from

the Carlsons that Henderson would not have any trouble making the payments.

The Wests received Henderson's monthly payments from April through July 1985. However, in February 1985 Henderson had trouble with the septic system and learned that it was not on the same tract of land as the house. Henderson later learned that the house, which was supposed to be on lot 23, was on the property line between lot 23 and lot 19. In July 1985 the well for the house went dry. Henderson did not make any payments after July 1985, and he moved out of the house. In December 1985 Henderson sued the Carlsons and the Wests, as assignees of the Carlsons' interest, for rescission and the Carlsons for damages in Montana state court. The Carlsons settled with Henderson, resulting in a dismissal with prejudice, and the Wests defaulted.

In July 1987, the Carlsons, the Wests, and Henderson agreed to sell the six acres and the house plus the 20 acres in lot 19 to Edward Fenlason. Fenlason paid $95,000 for the property. After subtracting $31,000 remaining on the Carlsons' contract for deed with Homestead for lot 19 and $5,600 for the cost of the sale, the amount Wests realized on the sale to Fenlason was $58,400.

The Wests sued the Carlsons in North Dakota, seeking rescission of the Carlson–West agreement because of fraud and failure of consideration. Alternatively, the Wests sought monetary damages for breach of contract or for deceit. After trial, the court refused to rescind the agreement, finding that the actions of the parties prior to trial made that remedy impossible. However, the court found that the evidence established a breach of contract and also clearly and convincingly established deceit. The court found that the Wests would have received $152,080 under the assignment of the Carlsons' interest in the Carlson–Henderson agreement ($122,460 in principal plus $29,620 in interest) and awarded the Wests $93,680 ($152,080 minus $58,400 realized in the sale to Fenlason), plus prejudgment interest and costs.

The Carlsons appealed, and the Wests cross-appealed.

In their cross-appeal, the Wests contended that the trial court erred in determining that the actions of the parties prior to trial made rescission impossible. They argued that rescission was appropriate because they could restore to the Carlsons the $60,000, Lot 23A, and the money from the sale to Fenlason.

■■■ A person who has been fraudulently induced to enter into a contract may either rescind the contract, or retain the benefits of the contract and obtain damages for injuries from the fraud. *Lanz v. Naddy*, 82 N.W.2d 809 (N.D.1957). The right to rescind a contract is governed by NDCC 9–09–01 through 9–09–04. *Blair v. Boulger*, 358 N.W.2d 522 (N.D.1984). Under NDCC 9–09–04, rescission is proper only if the party seeking rescission uses reasonable diligence to rescind promptly and to return everything of value which was received under the contract. *E.g., Holcomb v. Zinke*, 365 N.W.2d 507 (N.D. 1985). Restoration of the preceding status quo is a requirement for rescission.

■ We agree with the trial court that the actions of the parties prior to trial made rescission impossible. At the time of trial the Wests could not restore the Carlsons to their original status because the property which was the subject of the assignment of the Carlsons' interest had been sold to Fenlason. That transaction made restoration of the status quo impossible.

■ In their appeal, the Carlsons contended that the trial court's award of damages was based upon an erroneous conception of the law of fraud and deceit. They argued that in this type of case damages are sustainable only if there is a finding of actual fraud, which requires an intent to deceive. They asserted that, because the evidence presented at trial and the findings of fact do not establish an intent to deceive, the trial court erroneously awarded damages for constructive fraud, which does not require an intent to deceive.

We conclude that the evidence and the findings of fact established actual fraud[1] under NDCC 9–03–08:

> Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:
>
> 1. The suggestion as a fact of that which is not true by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;
> 3. The suppression of that which is true by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or
> 5. Any other act fitted to deceive.

Under this statute, actual fraud requires either an intent to deceive a party to the contract, or an intent to induce that party to enter into the contract. Subsections 2 and 3 define actual fraud as suppressing known material facts, or making false statements in a manner not warranted by the circumstances. *Diemert v. Johnson,* 299 N.W.2d 546 (N.D.1980); *Adams v. Little Missouri Minerals Ass'n,* 143 N.W.2d 659 (N.D.1966). When a party responds to an inquiry about the subject matter of a contract, the response must disclose full, accurate, and truthful information. *See Ostlund Chemical Co. v. Norwest Bank,* 417 N.W.2d 833 (N.D.1988) [applying NDCC 9–10–02]. Although actual fraud may not be presumed, it may be inferred from the facts and attendant circumstances

of the transaction. *Adams v. Little Missouri Minerals Ass'n,* 143 N.W.2d at 686. Actual fraud is a question of fact. NDCC 9–03–10. A trial court's determination of fraud will not be set aside on appeal unless clearly erroneous. *D.G. Porter, Inc. v. Fridley,* 373 N.W.2d 917 (N.D.1985). These facts and attendant circumstances supported an inference of actual fraud.

Paul West testified that he asked the Carlsons whether Henderson could make his monthly payments and was informed that Henderson would not have any trouble making the payments. West further testified that the Carlsons told him that the house required little upkeep and had been rented for eight or nine hundred dollars which was nothing out in Bozeman, Montana. There was also evidence that the Carlsons recognized that their deal with Henderson was relatively weak because Henderson had made no down payment and could walk away from the agreement under the Small Tract Financing Act of Montana, which precluded a deficiency judgment against Henderson. The Carlsons' weak position as a seller to Henderson was exacerbated by Henderson's testimony that Carlsons told him that the well produced six gallons of water per minute when it actually produced two-thirds of a gallon of water per minute. There was evidence that the Carlsons did not disclose those underlying facts to the Wests in assuring them that Henderson would not have any trouble making the monthly payments.

The trial court found:[2]

> The Wests are relatively unsophisticated people with little knowledge of commercial or real estate transactions and had no knowledge of the particular

---

1. The statutory definitions of actual fraud and deceit are similar. Compare NDCC 9–03–08; 9–10–02 and 9–10–03. We have recently said that a fraud action brought under NDCC 9–03–08 applies to misrepresentations between parties to a contract, while deceit under NDCC 9–10–02 applies where there is no contract between the parties. *Hellman v. Thiele,* 413 N.W.2d 321 (N.D.1987); *see Olson v. Fraase,* 421 N.W.2d 820, 827 n. 3 (N.D.1988). Because this case involves a contract, our analysis is under the actual fraud statute.

2. The Carlsons argued that they were denied due process because the trial court allowed counsel for the Wests to draft findings of fact which went beyond the court's memorandum opinion. The Carlsons' argument ignores that the trial court signed the findings of fact. When a trial court signs findings of fact, they become the findings of the court even though prepared by counsel. *D.G. Porter, Inc. v. Fridley,* 373 N.W.2d 917 (N.D.1985).

transaction between Carlson and Henderson.

The Defendant Gary Carlson failed to disclose material facts which were known or should have been known to him and which were not reasonably discoverable by the exercise of ordinary care and diligence on the part of the Wests and was bound in good faith to disclose to the Wests the material facts including the following:

a. The particulars of the capacity and flow rates of the water system on the property;

b. The problems in general with water supplies in the area;

\* \* \* \* \* \*

e. The precariousness of the payments under the Carlson–Henderson Agreement because of no cash down payment;

f. The precariousness of the payments under the Carlson–Henderson Agreement because of the provision that the Agreement was governed by the Small Tract Financing Act of Montana; and

g. The weak position of the sellers when entering the Carlson–Henderson Agreement.

\* \* \* \* \* \*

Given the superior position of the Carlsons and the fact that the Wests relied upon the Carlsons to their detriment, the Carlsons had a duty to disclose the material facts which they knew or should have known.

The Defendant Carlsons knew or should have known the Wests were relying on them and the Carlsons knew or should have known the Wests did not appreciate the situation they were entering into.

It is unlikely the Wests would have entered into the Agreement with the Carlsons if they had been fully informed of the situation.

The testimony of the Wests is in all ways credible, and in as much as the Carlsons' testimony is contradictory, the Court discounts the Carlsons' testimony.

Although the trial court cited *Holcomb v. Zinke*, 365 N.W.2d 507 (N.D.1985), a constructive fraud case, in its memorandum opinion, the court's findings demonstrate that it found that the Carlsons suppressed known material facts from the Wests with intent to induce them to enter into the contract. The court therefore found actual fraud within the definition of NDCC 9–03–08. The evidence presented at trial about the facts and circumstances of this transaction support an inference of actual fraud, and we are not left with a definite and firm conviction that the trial court made a mistake. Accordingly, the court's findings of fact are not clearly erroneous under NDRCivP 52(a).[3]

■■■ The Carlsons nevertheless contended that any statements they made to the Wests were not fraudulent but were matters of opinion. It is true that expression of an opinion is not fraud. *Sperle v. Weigel*, 130 N.W.2d 315 (N.D.1964). However, in our view, Carlsons' statements to Wests that Henderson would not have any trouble making the payments was more than a mere expression of an opinion. The Carlsons' statements were false assertions in a manner not warranted by the circumstances and, coupled with their failure to disclose other facts about the property and their weak position with Henderson, supported an inference of actual fraud. *See Ostlund Chemical Co. v. Norwest Bank*, 417 N.W.2d 833 (N.D.1988). Carlsons deceived Wests.

■■■ Similarly, the general rule that misrepresentations of matters of law do not ordinarily support an action for damages has a well-recognized exception. A person who undertakes to misrepresent the law in another jurisdiction is regarded as making actionable misrepresentations of fact and not opinion. *Nevcal Enterprises,*

3. Because of our resolution of this issue, we do not address the Carlsons' argument that damages cannot be awarded for constructive fraud. Additionally, because we sustain the judgment on the theory of actual fraud, it is unnecessary for us to consider the alternative theory of breach of contract for failure of consideration.

*Inc. v. Cal–Neva Lodge, Inc.*, 217 Cal. App.2d 799, 32 Cal.Rptr. 106 (1963); *see* Annot., *Misrepresentation as to matters of foreign law as actionable*, 24 A.L.R.2d 1039 (1952); *cf., Emanuel v. Engst*, 54 N.D. 141, 208 N.W. 840 (1925) [A buyer may rely upon a seller's false representations without investigation if the seller intended the statement to be believed and relied upon].

■ The Carlsons argued that they were denied due process because the Wests failed to plead the circumstances of fraud with particularity. We disagree.

The Wests' complaint alleged that the Carlsons represented that the Carlson–Henderson agreement was "as good as gold." The Wests' complaint also stated sufficient facts to allege that the property lacked an adequate water supply as well as other conditions which weakened their position with Henderson. We believe the allegations in the Wests' complaint outlined sufficient facts to advise the Carlsons of the allegations of fraud. *Sobolik v. Vavrowsky*, 146 N.W.2d 761 (N.D.1966). Fraud was sufficiently pled.

■ The Carlsons contended that the Wests failed to prove that damages were proximately caused by the Carlsons and that the trial court used the wrong measure of damages. We disagree.

■ It is well established that the measure of damages for fraud is the difference between what the property received would have been worth if it was as represented and what it was actually worth at the time of sale. *E.g., Coman v. Williams*, 65 N.W.2d 377 (N.D.1954). A trial court's determination of the amount of damages will not be set aside on appeal unless clearly erroneous. *Mougey v. Salzwedel*, 401 N.W.2d 509 (N.D.1987). Here, there was evidence that the assignment to the Wests of the Carlsons' interest in the Carlson–Henderson agreement should have been worth $152,080 if it was as represented. There was also evidence that the property was actually worth between $90,000 and $100,000 when it was sold in 1985. The property was subsequently sold to Fenla-

son for $93,000. That amount, after adjustments for the cost of the sale and the balance due on contract for deed with Homestead, was used to calculate the Wests' damages. After reviewing the record, we are not left with a definite and firm conviction that the court's determination of damages was wrong. Accordingly, we conclude that it is not clearly erroneous.

■ The Carlsons contended that this action was precluded by res judicata or collateral estoppel because of the judgment against the Carlsons and the Wests in Henderson's Montana action. We disagree. The Carlsons' argument ignored that Henderson's Montana action involved the Carlson–Henderson agreement and did not involve any claims by the Wests against the Carlsons arising out of the Carlson–West agreement. The issues of this lawsuit between Wests and Carlsons were not litigated in the Montana action. *See Matter of Estate of Starcher*, 447 N.W.2d 293 (N.D.1989). The doctrines of res judicata and collateral estoppel are not applicable here.

The judgment is affirmed.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, J., concurs in the result.