James KARY, Plaintiff and Appellant,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, Defendant and Appellee.

Civ. No. 950160.

Supreme Court of North Dakota.

Jan. 5, 1996.

Rehearing Denied Jan. 30, 1996.

Daniel J. Chapman (argued) of Chapman and Chapman, Bismarck, for plaintiff and appellant.

Robert J. Udland (argued) of Fleck, Mather & Strutz, Bismarck, for defendant and appellee. Appearance by DeeNelle L. Ruud. Appearance also by Jarod Endersbe of The Prudential Insurance Company of America.

LEVINE, Justice.

James Kary appeals from a summary judgment dismissing his action against the Prudential Insurance Company (Prudential), for fraudulent inducement to enter an employment contract. We affirm.

Kary has an accounting degree. After moving to Bismarck in 1980, he accepted an accounting position with Super Valu and became the assistant manager of the accounting department before leaving. In 1988, Kary accepted an accounting job with the North Dakota Teacher's Fund for Retirement. He also operated an accounting business from his home, doing bookkeeping for various businesses.

In July of 1990, Kary responded to a Prudential advertisement in the Bismarck Tribune for a financial security planner:

"Financial Security Planner. The Prudential is looking for a successful individual in the Bismarck area to begin a career in financial security planning. Individual training. Base salary plus commission. Clerical reimbursement available after 1st year. Income potential $25,000–$35,000 first year. $50,000+ second year. Pleas[e] call or send resume to: Don Stevens, Manager, Prudential, PO Box 2766, Fargo, ND 58108. 701–232–7124."

Kary contacted Prudential manager, Don Stevens, about the position, but decided he was not interested because it was a full-time position. On Stevens' urging, Kary took a sales aptitude test administered by Prudential. Stevens told Kary that, based upon the results of the test, he would be foolish not to accept the position on a full-time basis. When Kary inquired about what earnings he could expect, Stevens replied:

"'You could expect to make 40,000 the first year and by the third year you should be making 100,000.'"

Kary accepted the position on a commission basis, initially with a $400 per week guaranteed base salary, and he started work on August 29, 1990. Kary signed an agent's agreement, dated September 17, 1990, providing for scheduled commission payments, but not guaranteeing any specific salary:

"The Company agrees to compensate the Agent, for services performed under this Agreement, according to the terms of the 'Schedules of Compensation for District Agents' as they may be issued or amended by the Company from time to time.

* * *

"This agreement supersedes any previous agreement between the Agent and the Company...."

Kary claims that after he began working for Prudential, the Bismarck office manager, Jarod Endersbe, told him he was making over $100,000 a year and that another local agent, Rob Montgomery, "had made over $200,000 the year before." Kary earned only $22,000 in his first year as an agent with Prudential. He became so dissatisfied with his earnings and with the various company operating practices that he resigned on January 19, 1992.

Kary then sued Prudential, alleging that he was fraudulently induced to accept employment through Stevens' false statement about income potential and that he was also fraudulently induced to remain in Prudential's employ by Endersbe's later misrepresentations about what Endersbe and Montgomery were earning. The trial court granted Prudential's motion to dismiss the case, concluding that Stevens' statement was mere puffing, and not actionable, and that Endersbe's statements after Kary began working at Prudential were irrelevant to his claim

of fraudulent inducement to contract. Kary appealed.

We summarized the standards governing summary judgment in *Ellingson v. Knudson,* 498 N.W.2d 814, 817 (N.D.1993):

"Under Rule 56, N.D.R.Civ.P., a summary judgment should be granted only if it appears that there are no issues of material fact or any conflicting inferences which may be drawn from those facts. *See Production Credit Ass'n of Minot v. Klein,* 385 N.W.2d 485 (N.D.1986). The party seeking summary judgment has the burden to clearly demonstrate that there is no genuine issue of material fact. *Binstock v. Tschider,* 374 N.W.2d 81, 83 (N.D.1985). In considering a motion for a summary judgment, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence to determine whether summary judgment is appropriate. *Everett Drill. Vent. v. Knutson Flying Serv.,* 338 N.W.2d 662, 664 (N.D.1983). The court must view the evidence in a light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *See Stokka v. Cass Cty. Elec. Coop, Inc.,* 373 N.W.2d 911 (N.D.1985). Courts must also consider the substantive standard of proof at trial when ruling on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 474 (N.D.1991)."

■ Actionable fraud under Section 9–03–08, N.D.C.C., includes the making of an affirmative statement of fact, known to be untrue, with intent to deceive another or induce another to enter into a contract. *Bourgois v. Montana–Dakota Utilities Co.,* 466 N.W.2d 813 (N.D.1991). Fraud is never presumed, but must be proved by evidence that is clear and convincing. *Sargent County Bank v. Wentworth,* 500 N.W.2d 862 (N.D. 1993).

■ Kary asserts the trial court erred in concluding that Don Stevens' statement that Kary could expect to make $40,000 the first year and $100,000 by the third year was mere puffing and not actionable as fraud. He argues this court's decision in *West v. Carlson,* 454 N.W.2d 307 (N.D.1990) supports his claim that Stevens' statement constitutes actionable fraud.

The parties in *West* entered a property swap arrangement, with the Wests taking an assignment of a contract from the Carlsons, entitling the Wests to get monthly payments from Daniell Henderson for a house and property the Carlsons had sold to him. This court held the Carlsons committed fraud when, along with their failure to disclose other facts, they gave the Wests assurances that Henderson would not have any trouble making the contract payments. The statement was fraudulent, because the Carlsons knew, but failed to disclose to the Wests, important facts underlying the Henderson contract. The Carlsons knew Henderson had not made a down payment on the property and that, under Montana law, where the property was situated, Henderson could abandon the contract without liability for a deficiency judgment. The Carlsons also knew that a well on the property produced only two-thirds of a gallon of water per minute, but they had told Henderson the well produced six gallons of water per minute. Considering the Carlsons' failure to disclose this relevant information, we concluded their statement about Henderson making payments, "coupled with their failure to disclose other facts," *id.* at 311, was false and was made with an intent to deceive. The circumstances here are vastly different and clearly distinguishable. There was no failure here to disclose other material facts. Stevens' opinion on the single subject of what Kary might earn as a Prudential salesman, was merely an expression of future possibilities. The statement was based upon Kary's aptitude test results, not upon undisclosed prior dealings between them or with others.

■ In *Sperle v. Weigel,* 130 N.W.2d 315, 320 (N.D.1964), this court ruled that, generally, expressions of mere opinion or predictions of future events are not actionable in fraud:

"Ordinarily, misrepresentations amounting to fraud which will avoid a contract must relate to past or present facts, and cannot consist of unfulfilled promises or predictions with respect to future events, especially where intent to deceive is absent. . . .

"One of the essential elements of fraud is that there be a false representation of a material fact which either exists in the present or has existed in the past, and a mere expression of an opinion in the nature of a prophecy as to the happening or nonhappening of a future event is not actionable. . . ." [Citations omitted.]

Generally, statements of value and predictions of future earnings or profits fall within the class of statements whose truth or falsity cannot be precisely determined and which are not, therefore, actionable as misrepresentations of fact. *See Loula v. Snap–On Tools, Corp.*, 175 Wis.2d 50, 498 N.W.2d 866, 868 (1993). *See also Penzell v. Taylor*, 219 Ill. App.3d 680, 162 Ill.Dec. 142, 146, 579 N.E.2d 956, 960 (1991) (statements regarding future events or circumstances are not a basis for fraud). In spite of Stevens' statement about potential earnings, Kary's deposition testimony shows he clearly understood the uncertain nature of his earnings with Prudential, because it was a "sales job . . . [o]n commissions . . . solely dependent on how hard [he] worked" and that he "could also get nothing . . . if [he] didn't sell policies." The trial court concluded, "[Stevens'] statement is an opinion in the nature of a prophe[c]y as to the happening of a future event and is not actionable." We conclude the trial court's assessment was correct and that Kary has not raised a genuine issue of material fact for trial of his fraud claim based upon Stevens' statement.

 Kary also asserts that the trial court erred in concluding Endersbe's statements about his own and Rob Montgomery's past earnings were not actionable in fraud. Although actions involving state of mind, such as fraud, are not usually suited for disposition by summary judgment, if a plaintiff fails to support his opposition to a summary judgment motion with sufficient facts to show that there is a genuine issue for trial, then, even in these cases, summary judgment is appropriate. *See Boone v. Estate of Nelson*, 264 N.W.2d 881, 887 (N.D.1978). Summary judgment is proper when a party fails to raise even a reasonable inference of the existence of an element essential to the party's claim, which must be proved at trial. *Matter of Estate of Stanton*, 472 N.W.2d 741, 746 (N.D.1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A key element in proving fraud or deceit is reliance by the complaining party upon the false or misleading representations. *Dvorak v. American Family Mut. Ins. Co.*, 508 N.W.2d 329 (N.D.1993). The trial court determined that, as a matter of law, Kary failed to demonstrate any reliance on Endersbe's comments that Endersbe earned over $100,000 a year and Rob Montgomery earned more than $200,000 a year with Prudential.

Kary's deposition testimony supports the trial court's assessment that Kary did not rely on Endersbe's statements. Prudential's attorney questioned Kary about Endersbe's salary:

"Q. . . . When did you find out a $100,000 salary for Jarod Endersbe was not true?

"A. I guess I never did.

"Q. You never did. It was just something you suspected?

"A. Yeah."

Kary testified that he learned the truth about Rob Montgomery's earnings in the Spring of 1991, six months after Kary began employment with Prudential:

"I drove to a seminar in Fargo with Rob Montgomery and at that time I questioned him about his salary. And then he told me that it was completely untrue. In fact, he told me his—he did have his best year in the business, but he made like 68,000, so I was kind of shocked, to say the least."

Kary acknowledges he was in an at-will position with Prudential and could have quit at anytime. Nevertheless, after learning in the Spring of 1991 that Montgomery did not earn $200,000 a year, Kary continued his employment with Prudential and did not resign until January 19, 1992.

Kary also revealed in his deposition that, during the entire time he worked at Prudential, data was posted from which he, or any other agent, could determine what others

were earning in the company, if he "would sit down to take the time to calculate it out," which he did not do, because he "really wasn't too concerned." Through this deposition testimony, Kary concedes Prudential gave him the information to determine other's incomes, but that he was not concerned enough to make the effort.

We agree with the trial court that Kary has failed, as a matter of law, to show any reliance by him on Endersbe's statements. Consequently, Kary has not established an issue of material fact, based upon these statements, on the essential element of reliance, and summary judgment is proper. *Matter of Estate of Stanton*, 472 N.W.2d at 746.

Affirmed.

VANDE WALLE, C.J., SANDSTROM and NEUMANN, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.