Peterson v. Peterson, 555 N.W.2d 359 (N.D. 1996)|N.D. Supreme Court|
Peterson v. Peterson, 555 N.W.2d 359 (N.D. 1996)
[Go to Documents]
Filed Nov. 13, 1996
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
Michael Dennis Peterson, Plaintiff and Appellant
v.
Deidre L. Peterson, Defendant and Appellee
Civil No. 960124
Appeal from the District Court for Steele County, East Central Judicial District, the Honorable Lawrence A. Leclerc, Judge.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
Opinion of the Court by VandeWalle, Chief Justice.
Joanne H. Ottmar, of Ottmar & Ottmar, Jamestown, for plaintiff and appellant. Appearance by appellant Michael Peterson.
Maureen Holman, of Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellee.
[555 N.W.2d 360]
Peterson v. Peterson
Civil No. 960124
VandeWalle, Chief Justice.
Michael Peterson appealed from a December 6, 1995 judgment dividing marital property and awarding custody and child support. We hold the trial court did not abuse its discretion in partially vacating a prior divorce decree. We further hold the trial court's division of marital property and award of custody were not clearly erroneous, but it must redetermine child support in accordance with the Child Support Guidelines. We affirm in part, reverse in part, and remand for a redetermination of child support.
Michael and Deidre Peterson were married in 1979. Their three children were ages 12, 11, and 9 when judgment was entered. During the marriage the family resided on a farm near Finley. Michael conducted a farming operation with his brother, and Deidre worked as a registered nurse at a hospital in Mayville.
In February 1992, Michael learned Deidre had an intimate relationship with another man. Michael was outraged and told Deidre he wanted a divorce. Deidre was served with a summons and complaint on March 11, 1992. The next day Michael took Deidre to
[555 N.W.2d 361]
an attorney he had retained in Finley and they executed a divorce stipulation settling property division, custody, and child support issues. Nine days later, on March 23, 1992, Michael appeared at a default hearing and on the following day the district court entered a divorce decree, based on the parties' stipulation.
Almost one year later, Deidre retained an attorney and filed a motion under Rule 60(b), N.D.R.Civ.P., to vacate the original divorce decree. The trial court granted the motion, vacating all parts of the judgment except for the decree of divorce. After a hearing, the court redetermined property division, custody, and child support. Judgment was entered on December 6, 1995, and Michael appealed.
Michael first asserts the trial court abused its discretion in vacating the original divorce decree. Rule 60(b), N.D.R.Civ.P., as a vehicle for seeking relief from a judgment, attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done. Kuehl v. Lippert, 401 N.W.2d 523 (N.D. 1987). In reviewing a trial court's grant of a motion to vacate a judgment we determine only whether the trial court abused its discretion. Soli v. Soli, 534 N.W.2d 21 (N.D. 1995). The trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. Crawford v. Crawford, 524 N.W.2d 833 (N.D. 1994). A trial court acts in an arbitrary, unreasonable or unconscionable manner when its decision is not the product of a rational mental process by which the facts and law relied on are stated and considered together for the purpose of achieving a reasoned and reasonable determination. Clooten v. Clooten, 520 N.W.2d 843, 845 (N.D. 1994). If the judgment sought to be set aside is entered pursuant to a stipulation of the parties, the party challenging the judgment under Rule 60(b), N.D.R.Civ.P., has the additional burden of showing that under the law of contracts there is justification for setting the contract aside. Soli, 534 N.W.2d at 23.
At the hearing on the motion the trial court ruled from the bench:
"[T]he defendant was under duress. Things just happened too fast in this case. Sue for divorce one day, settle a case the next day, one lawyer involved. . . . [S]he was mislead (sic) and imposed upon and entered into this agreement under duress. . . .
"So we're going to reopen it. The judgment of the Court is vacated."
The court had considerable evidence before it supporting its conclusion that Deidre stipulated to the terms of the divorce because she was misled and under extreme duress and that the stipulation was not, therefore, voluntary or consensual. Deidre testified by affidavit:
"I was in a state of extreme emotional distress and believed I had no other options than to agree with the proposal my husband made. I feared for my physical well-being, and also feared for the well-being of our children unless I agreed to the stipulation.
* * * * *
"I was served with a summons and complaint for divorce on March 11, 1992.
* * * * *
"On March 12, the day after I received the complaint, we signed the stipulation in this case at his lawyer's office. It was happening so fast I couldn't think. Mike told me he would not try to take the children if I agreed not to take any part of his farming operation.
* * * * *
"I knew that Mike had seen a doctor in Cooperstown and was taking an anti-depressant. However, every time he came near me he became wild and went into a rage.
"On March 18 I went to a parent-teacher conference . . . .
"That same day, I was returning home to meet our youngest daughter Danielle . . . . She jumped out of her car and ran toward me. She grabbed me and was crying. She said she had been afraid I was dead because Mike had told her that he was going to kill me and Ron. . . .
[555 N.W.2d 362]
"I continued to be extremely fearful. I thought that if I did not go through with the divorce and the agreement that Mike had worked out, that Mike would physically harm me.
"Mike's lawyer told me that the hearing on the divorce would be on March 23, 1992. I called the courthouse on March 20 thinking I might be able to stop the hearing. I also tried to contact a lawyer on the 20th but the lawyer was not able to meet with me prior to the hearing on the 23rd. Mike told me that I better not try to stop anything.
* * * * *
"I have learned that Mike has significant farm assets, both in terms of real property in which he has an interest and farm equipment which he owns. . . .
"I have found that Mike was less than candid regarding his income. He said that his income has averaged $40,000 over the last seven years. . . .
"In 1991, the net income from the farm operation was over $87,000 and Mike had almost $40,000 depreciation which should have been considered in calculating child support. The 1990 tax return shows farm income of $125,000 and depreciation of over $27,000."
Under Rule 60(b)(iii), N.D.R.Civ.P., the court can set aside a judgment for fraud, misrepresentation, or other misconduct of an adverse party. Also, under Rule 60(b)(vi), N.D.R.Civ.P., the court can set aside a judgment for any other reason justifying such relief. This rule "provides the ultimate safety valve to avoid enforcement by vacating a judgment to 'accomplish justice.'" Crawford, 524 N.W.2d at 836.
The facts of this case support vacating the original divorce decree under both of these provisions of Rule 60(b), N.D.R.Civ.P. The stipulation was signed within 24 hours of service of the divorce papers upon Deidre, with only Michael's attorney to advise the parties. Deidre signed under threats of losing her children and to her own life. The default decree was entered within nine days, after Deidre unsuccessfully attempted to secure an attorney and postpone the hearing. As a matter of public policy, a stipulation in a divorce proceeding which occurs this rapidly with the use of one attorney and under serious threats of harm to one of the parties should be viewed with great skepticism. Furthermore, there is significant evidence that Michael did not honestly reveal his assets or income. Section 9-09-02, N.D.C.C, authorizes rescission of a contract by a party where consent was obtained "through duress, menace, fraud, or undue influence." The trial court found duress and misrepresentation by Michael as factors resulting in Deidre's acquiescence to the divorce stipulation. Under the facts of this case, we conclude it was not an abuse of discretion for the trial court to vacate the terms of the original divorce decree regarding property division, custody, and child support.
Michael next asserts the trial court's property division is clearly erroneous. The trial court's division of marital property is a finding of fact, which we will not overturn unless it is clearly erroneous. Fenske v. Fenske, 542 N.W.2d 98 (N.D. 1996). The trial court's finding is clearly erroneous only if we are left with a definite and firm conviction that a mistake has been made. Buzick v. Buzick, 542 N.W.2d 756 (N.D. 1996).
In its written findings the trial court made the following determination regarding property division:
"Given the distribution of the property to date, a cash payment is required in order to achieve an equitable division of the property acquired during the marriage. The net value of the undistributed estate is $150,000. Michael must pay to Deidre the sum of $75,000 in lieu of a transfer of property. He shall pay $20,000 within 60 days, the balance over a ten-year period at an interest rate of 7 percent. Deidre shall have a mortgage on all of the real property in which Michael has an interest to secure payment of the property settlement."
Michael claims there is no way to determine how the court arrived at the figure of $150,000. We disagree. On the Rule 8.3 listing of property and debts, Michael valued the net marital estate as a negative $58,665 and Deidre valued the net marital estate as a positive $496,971. Each party had an expert
[555 N.W.2d 363]
testify on property values. The trial court was not impressed with the evidence of property values and made that clear in his statement after the hearing:
"The Court has considered the relevant evidence, the testimony of the parties as is relevant, and considered the credibility of the witnesses. I have to say that the credibility of the witnesses is not at issue here as far as I'm concerned, except Mr. Peterson's. I do not find his testimony in many instances as to values and the existence or nonexistence of assets to be entirely credible.
". . . the testimony of the two expert witnesses as to values I find to be incomplete. Not entirely satisfactory using my gauge. But that's all we have."
The trial court's valuation of the undistributed net marital estate was within the range of values submitted to the court. Utilizing the valuations before it, the court decided a $75,000 payment to Deidre would result in an equitable distribution of the total estate. We are not left with a definite and firm conviction the trial court made a mistake, and we conclude, therefore, the trial court's property division is not clearly erroneous.
Michael asserts the trial court's custody award is clearly erroneous. The trial court's custody placement is a finding of fact which will not be reversed on appeal unless it is clearly erroneous. Ryan v. Flemming, 533 N.W.2d 920 (N.D. 1995). The trial court awarded primary physical custody of the three children to Deidre with reasonable and liberal visitation for Michael. He awarded Michael visitation, at a minimum, of alternating weekends, one week at Christmas, one week of winter vacation, and eight weeks in the summer. Michael claims this custody placement is clearly erroneous, because Michael is too busy with his farming operation during the summer to give the children adequate attention and he would rather have physical custody of them from November 15 to March 1 of each year. Michael had custody of the children during those times each year since the divorce, and he claims the arrangement was working well and should not be changed.
The trial court found the children have developed and prospered because they have been living in a stable, satisfactory environment with Deidre as the primary caregiver. However, the court also concluded it is in the children's best interests to continue having extended contact with Michael. The trial court explained why he believed the eight-week summer visitation with Michael was in the best interests of the children instead of the prior custody arrangement where he would have custody from November 15 to March 1 each year:
"[T]he three month visitation in the middle of the school year is disruptive to the children's educational progress. The three month visitation also needlessly requires Deidre to remain in the Finley community.
"It is in the children's best interests that Michael have eight weeks of visitation during the summer and such time as the children are not in school. Michael shall have the right to select the eight weeks."
We conclude the trial court's custody placement is not clearly erroneous.
Finally Michael asserts the trial court's award of child support is also clearly erroneous. The trial court ordered Michael to pay Deidre child support of $900 per month for the three children. It based its award on the following finding:
"Michael has income of approximately $30,000 per year. He has the ability to pay and Deidre has the necessity for the sum of $900 per month in child support. Said child support may not be in compliance with the North Dakota guidelines for child support, but it is, nevertheless, an appropriate level of support."
Michael claims his five-year income average is about $19,766 and, under the guidelines, he should have a child support obligation of only $554 per month. Deidre claims Michael's average net income exceeds $43,500 and, under the guidelines, he is obligated to pay more than $900 per month.
The trial court's determination on child support is a finding of fact and will be affirmed unless it is clearly erroneous. Reinecke v. Griffeth, 533 N.W.2d 695 (N.D. 1995). Section 14-09-09.7, N.D.C.C., creates a rebuttable
[555 N.W.2d 364]
presumption that the amount of child support provided under the guidelines is the correct amount. However, a trial court may deviate from the guideline amount if it finds by a preponderance of the evidence that the presumptive guideline amount is not the correct amount of child support required, after taking into consideration the best interests of the child. N.D.C.C. 14-09-09.7(3); N.D.A.C. 75-02-04.1-09(2); Dalin v. Dalin, 545 N.W.2d 785 (N.D. 1996). To calculate the correct amount of child support the trial court must specifically find the obligor's net income in accordance with the guidelines. Foreng v. Foreng, 509 N.W.2d 38 (N.D. 1993). Here, the trial court did not indicate that it computed Michael's income in accordance with the guidelines or that it applied the guidelines in computing the child support obligation. Significantly, the trial court recognized the support ordered was not in compliance with the guidelines, but the court did not make findings to justify the deviation from the presumptively correct amount under the guidelines, i.e., why the amount under the guidelines is not the correct amount of support required. Consequently, we conclude the trial court's award of child support is clearly erroneous and the court must redetermine child support by specifically applying the guidelines to determine Michael's net income and his support obligation or finding from the evidence that the presumptive amount is not the correct amount in this instance.
The judgment is affirmed as to property division and custody and is reversed as to child support and remanded for a redetermination of that issue.
Gerald W. VandeWalle, C.J.
Dale V. Sandstrom
Herbert L. Meschke
Ralph J. Erickstad, S.J.
William A. Neumann Ralph J. Erickstad, S.J.
, sitting in place of MARING, J., disqualified.