2014 ND 179

## GOLDEN EYE RESOURCES, LLC, Plaintiff, Appellee and Cross–Appellant

v.

Debra K. GANSKE, Wesley G. Borgen, Gay M. King, Michael R. Borgen, Sue E. Evans and Linda R. McCoy, Defendants

Debra K. Ganske, Wesley G. Borgen, Michael R. Borgen, Sue E. Evans and Linda R. McCoy, Appellants and Cross–Appellees.

No. 20130219.

Supreme Court of North Dakota.

Sept. 23, 2014.

Nick A. Swartzendruber (argued), Denver, CO, and Charles L. Neff (appeared), Williston, N.D., for plaintiff, appellee and cross-appellant.

Zachary E. Pelham (argued) and Patrick W. Durick (on brief), Bismarck, N.D., for appellants and cross-appellees.

SANDSTROM, Justice.

[¶ 1] Debra Ganske, Wesley Borgen, Michael Borgen, Sue Evans, and Linda McCoy ("the Borgens") appeal from a district court summary judgment quieting title (deciding ownership) in certain oil and gas leases in Golden Eye Resources, LLC ("Golden Eye") and dismissing their counterclaim for rescission or cancellation of the leases. Golden Eye has cross-appealed. We reverse and remand, concluding the district court erred in concluding the Borgens' fraudulent inducement claims were barred as a matter of law, and the court therefore erred in dismissing their rescission action and quieting title in the leases in Golden Eye.

I

[¶ 2] The Borgens are siblings who own mineral interests in Williams County. In 2009, representatives of Golden Eye contacted the Borgens to inquire about leasing their mineral interests. The Borgens ultimately leased their mineral interests to Golden Eye in December 2009. The Borgens' cousin, Gay King, also leased mineral interests to Golden Eye, but she is not a party to this appeal.

[¶ 3] The parties engaged in extensive negotiations leading up to the execution of the leases. The Borgens claim they made it clear to Golden Eye that they would only lease to an experienced company that would ultimately drill and operate the wells on the property. The Borgens claim Golden Eye made numerous material misrepresentations during the negotiations to induce them to lease their interests to Golden Eye, including: (1) Golden Eye "absolutely" was going to drill the wells itself and would not assign the leases; (2) Golden Eye had already acquired 7,000 mineral acres in the township where the Borgens' minerals were located; (3) Golden Eye had a "permit man" in Bismarck securing drilling permits on the acreage Golden Eye had already acquired in the area; (4) Golden Eye had successfully drilled wells in the past in Canada; (5) Golden Eye was establishing spacing units; and (6) Golden Eye would begin drilling as soon as it secured a drilling rig and would

drill the Borgens' interests first if the leases were signed. The Borgens contend these misrepresentations induced them to sign leases with Golden Eye rather than with another company, Tracker Resources Exploration, that had offered leases on more favorable financial terms.

[¶ 4] In May 2010, the Borgens learned Petro–Hunt, LLC, had obtained a drilling permit to drill a well ("the Borrud well") in a drilling unit encompassing some of the Borgen minerals. The Borgens also learned Golden Eye only had a 19 per cent interest in the spacing units where the Borgens' minerals were located. On May 28, 2010, the Borgens sent a notice of rescission to Golden Eye seeking to rescind the leases for fraud in the inducement and offering to return to Golden Eye all payments they had received under the leases. The Borgens claim they also learned Golden Eye did not have a "permit man" working to obtain drilling permits at the time of the negotiations and Golden Eye had not previously drilled wells in Canada or the United States.

[¶ 5] In July 2010, Golden Eye entered into a "Participation Agreement" with Northern Oil and Gas, Inc. ("Northern"), assigning 58.32% of its working interest in the Borrud drilling unit to Northern. The Borgens contend this agreement violated anti-assignment provisions in their leases which prohibited Golden Eye from assigning or subleasing its rights under the lease without the Borgens' consent. The Borgens claimed this was a breach of contract warranting cancellation of the leases, and the Borgens mailed notices of cancellation of the leases to Golden Eye.

[¶ 6] Golden Eye sued the Borgens to quiet title to the leased interests and sought damages for breach of contract and intentional interference with contract. The Borgens answered and counterclaimed, seeking rescission or cancellation of the leases. On multiple motions and cross-motions for summary judgment, the court ultimately ordered that the Borgens' rescission claims based upon fraudulent inducement were barred as a matter of law; that Golden Eye's breach of contract and intentional interference with contract claims be dismissed; that the Borgens' counterclaims for rescission or cancellation of the leases be dismissed; and that title to the leases be quieted in Golden Eye. Summary judgment was entered quieting title in the leases in Golden Eye and dismissing all other claims and counterclaims of the parties.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal and cross-appeal are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 8] This Court's standard for reviewing summary judgment is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On

appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Van Sickle v. Hallmark & Assocs., Inc.,* 2013 ND 218, ¶ 12, 840 N.W.2d 92.

### III

[¶ 9] The dispositive issue on this appeal is whether the district court erred in granting summary judgment dismissing the Borgens' claims they were fraudulently induced into signing the leases by Golden Eye's alleged misrepresentations.

### A

[¶ 10] The consent of the parties to a contract must be free, mutual, and communicated by each to the other, and consent is not free if obtained through fraud. N.D.C.C. §§ 9–03–01 and 9–03–03(3); *American Bank Ctr. v. Wiest,* 2010 ND 251, ¶ 10, 793 N.W.2d 172; *Erickson v. Erickson,* 2010 ND 86, ¶ 7, 782 N.W.2d 346. If a party's apparent free consent to the contract has been obtained by fraud, the defrauded party may rescind the contract in the manner prescribed by N.D.C.C. ch. 9–09. N.D.C.C. §§ 9–03–02 and 9–09–02(1); *Erickson v. Brown,* 2008 ND 57, ¶ 25, 747 N.W.2d 34; *Peterson v. Peterson,* 555 N.W.2d 359, 362 (N.D.1996); *Delzer v. United Bank of Bismarck,* 527 N.W.2d 650, 653 (N.D.1995).

[¶ 11] For purposes of determining whether consent to a contract was obtained by fraud, "actual fraud" is defined in N.D.C.C. § 9–03–08:

Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with the party's connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

"Actual fraud is always a question of fact." N.D.C.C. § 9–03–10. Furthermore, because " 'intent to defraud and deceive is ordinarily not susceptible of direct proof, fraud ... may be inferred from the circumstances' at the time of the transaction." *American Bank Ctr.,* 2010 ND 251, ¶ 12, 793 N.W.2d 172 (quoting *Dewey v. Lutz,* 462 N.W.2d 435, 441 (N.D.1990)); *see also West v. Carlson,* 454 N.W.2d 307, 310 (N.D.1990) ("actual fraud ... may be inferred from the facts and attendant circumstances of the transaction").

### B

[¶ 12] The Borgens contend Golden Eye made numerous factual misrepresentations, constituting actual fraud, which fraudulently induced them to enter into the leases. They allege they made it clear from the beginning of negotiations with Golden Eye that they were only interested in leasing to a company which could drill and operate wells itself. They further claim the alleged misrepresentations by Golden Eye induced them into leasing to

Golden Eye instead of to another company on more favorable financial terms.

[¶ 13] The district court, in its summary judgment order dismissing the Borgens' fraudulent inducement claims, summarized the alleged material misrepresentations:

As the basis for their fraudulent inducement claim, the Defendants argue that the following misrepresentations were made to them prior to signing the leases:

1. That Golden Eye itself would drill the wells and develop the Defendants' minerals.

2. That Golden Eye had drilled in Canada and was very successful.

3. That the only things that would prevent Golden Eye from drilling would be an inability to obtain a drilling rig or if the price of oil would plummet.

4. That Golden Eye would drill the Defendants' minerals as soon as they obtained a drilling rig and would drill the Defendants' minerals first.

5. That Golden Eye had a permit man in Bismarck who was securing permits on mineral acres Golden Eye had already acquired, and Golden Eye wanted to include the Defendants' minerals in that permit process.

6. That Golden Eye had acquired 7,000 net mineral acres in the Tyrone Township, where the Defendants' property is located, and was developing that township.

7. That Golden Eye had operating permits in the Defendants' area.

8. That the Defendants should *not* sign with Tracker Resources Exploration, because Tracker is not a good company, Tracker's drilling performance was unsatisfactory, and Tracker would not be the company to actually develop the minerals.

9. That Golden Eye was going to drill and produce the minerals using the best and newest technology.

10. That Golden Eye had operating/drilling control over the sections where the Defendants' minerals were located.

11. That Dick McKee [Golden Eye's principal owner] is very wealthy, highly successful, very experienced in drilling horizontal wells and owns his own equipment with the best technology.

[¶ 14] The Borgens contend these statements constituted actual fraud under N.D.C.C. § 9–03–08, and they were thereby fraudulently induced into signing the leases. They argue they therefore did not freely consent to the leases and rescission is appropriate.

[¶ 15] The district court concluded that those misrepresentations indicating Golden Eye intended to drill and operate the wells itself and suggesting the Borgens' property would be drilled first contradicted the terms of the leases and were therefore barred by the parol evidence rule. The court further concluded the remaining misrepresentations constituted mere "sales talk," "puffery," or "opinion" and were not material to the Borgens' fraudulent inducement claims.

## C

[¶ 16] The decision to admit parol evidence is a question of law, fully reviewable on appeal. *E.g., Finstad v. Gord,* 2014 ND 72, ¶ 13, 844 N.W.2d 913; *Myaer v. Nodak Mut. Ins. Co.,* 2012 ND 21, ¶ 20, 812 N.W.2d 345. The parol evi-

dence rule is codified in N.D.C.C. § 9–06–07:

> The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.

[¶ 17] The parol evidence rule is a rule of substantive law, and parol evidence generally cannot be used to vary or contradict the terms of a complete, written contract adopted as a definite expression of the parties' agreement. *Finstad,* 2014 ND 72, ¶ 13, 844 N.W.2d 913; *Myaer,* 2012 ND 21, ¶ 20, 812 N.W.2d 345. We have clarified, however, that parol evidence may be considered when the written agreement does not reflect the parties' intent because of fraud, mistake, or accident. *Finstad,* at ¶ 13; *Myaer,* at ¶ 20. This Court has explained the application of the parol evidence rule:

> " ' " 'Where parties, *without any fraud or mistake,* have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement:' ... 'all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and *"unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence."* ' " ' "

> . . . .

We have approved and applied this rule in the interpretation of § 9–06–07, N.D.C.C., and have held:

> "Where a written contract is complete in itself, is clear and unambiguous in its language and contains mutual contractual covenants agreed upon, such parts cannot be changed by parol

testimony, nor new terms added thereto, in the absence of a clear showing of fraud, mistake or accident."

*Citizens State Bank–Midwest v. Symington,* 2010 ND 56, ¶ 19, 780 N.W.2d 676 (quoting *Des Lacs Valley Land Corp. v. Herzig,* 2001 ND 17, ¶ 8, 621 N.W.2d 860); *see also Gajewski v. Bratcher,* 221 N.W.2d 614, 626 (N.D.1974). Accordingly, the parol evidence rule does not apply to the immediate parties to a contract where one of the parties alleges fraud as a defense to the validity of the contract, and parol evidence is admissible to show the inducement for entering the contract. *Symington,* at ¶ 20; *Krank v. A.O. Smith Harvestore Prods., Inc.,* 456 N.W.2d 125, 130 (N.D.1990); *Smith v. Michael Kurtz Constr. Co.,* 232 N.W.2d 35, 39 (N.D.1975); *Verry v. Murphy,* 163 N.W.2d 721, 730 (N.D.1968); *Schue v. Jacoby,* 162 N.W.2d 377, 382 (N.D.1968).

[¶ 18] This exception to the parole evidence rule applies even if the evidence contradicts or conflicts with the terms of the written agreement:

> It is widely agreed that oral testimony is admissible to prove fraud or misrepresentation, mistake or illegality. This exception to the parol evidence rule applies even if the testimony contradicts the terms of a completely integrated writing.

6 Peter Linzer, *Corbin on Contracts* § 25.20[A], at 277–79 (2010) (footnotes omitted). The court in *Poeppel v. Lester,* 2013 S.D. 17, ¶ 22, 827 N.W.2d 580, recently noted that "[a] substantial majority of jurisdictions follow the traditional, majority view that the parol evidence rule is inapplicable in cases of fraudulent inducement." Thus, "parol or extrinsic evidence is admissible to prove fraud," and "[t]he parol evidence rule is simply not applicable

when fraud has been employed as enticement to enter a contract." *Poeppel*, at ¶ 20. In such cases, "[t]o bar extrinsic evidence would be to make the parol evidence rule a shield to protect misconduct." 6 Linzer, *supra*, § 25.20[A], at 280. Furthermore, this Court has expressly cautioned that the statute of frauds may not be employed to perpetrate a fraud or promote an injustice. *See, e.g., Trosen v. Trosen*, 2014 ND 7, ¶ 21, 841 N.W.2d 687; *Ned Nastrom Motors, Inc. v. Nastrom-Peterson–Neubauer Co.*, 338 N.W.2d 64, 70 (N.D.1983); *Nelson v. TMH, Inc.*, 292 N.W.2d 580, 584 (N.D.1980).

◼ [¶ 19] The district court in this case held that several of the Borgens' allegations of fraud could not be considered because they contradicted the terms of the written leases. The court has misconstrued the application of the parol evidence rule. The rule prohibits consideration of oral statements which vary or contradict the terms of the written agreement when interpretation of the agreement itself is at issue. That is a completely separate question from whether one party was induced to enter into the agreement by the other party's fraudulent misrepresentations. In the latter case, the ultimate issue is whether the party freely consented to the terms of the agreement, and the parol evidence rule does not apply.

[¶ 20] Because this case was decided on summary judgment, we must accept all of the Borgens' factual allegations as true. If Golden Eye did in fact make blatant factual misrepresentations and made the alleged promises without any intention of performing them, its conduct demonstrates an intentional, continual pattern of lies and deceit specifically designed to fraudulently induce the Borgens to enter into the leases with Golden Eye. Application of the parol evidence rule to prohibit consideration of the alleged fraudulent conduct would allow Golden Eye to use the statute of frauds as a shield to perpetrate fraud and injustice.

[¶ 21] In this case, the Borgens have alleged they did not freely consent to the lease because they were fraudulently induced by the numerous alleged factual misrepresentations of Golden Eye. They do not seek to enforce the alleged oral promises and misrepresentations, but rather seek to entirely rescind the leases because of the fraudulent inducement. In such a case, the parol evidence rule simply does not apply, and it is immaterial whether the alleged oral statements contradicted terms in the written agreement. *See Symington*, 2010 ND 56, ¶ 20, 780 N.W.2d 676; *Krank*, 456 N.W.2d at 130; *Poeppel*, 2013 S.D. 17, ¶ 20, 827 N.W.2d 580; 6 Linzer, *supra*, § 25.20[A], at 277–79. We therefore conclude the district court erred in concluding that the alleged misrepresentations indicating Golden Eye intended to drill and operate the wells itself and the Borgens' property would be drilled first were barred by the parol evidence rule.

### D

◼ [¶ 22] The district court concluded the remaining alleged misrepresentations were mere sales talk, puffery, or opinion.

◼ [¶ 23] Section 9–03–08, N.D.C.C., defines actual fraud, and includes statements of fact which the party does not believe to be true, the suppression of material facts by one having knowledge or belief of the fact, and a promise made without any intention of performing it. The making of an affirmative statement of fact, known to be untrue, with intent to induce another to enter into a contract is actionable fraud under N.D.C.C. § 9–03–08. *Kary v. Prudential Ins. Co. of Am.*, 541 N.W.2d 703, 705 (N.D. 1996). Statements of opinion, or which amount to mere puffery or sales talk, do

not constitute fraud. *Id.* at 705–06; *West v. Carlson,* 454 N.W.2d 307, 311 (N.D. 1990). As the Court explained in *Kary,* at 706 (quoting *Sperle v. Weigel,* 130 N.W.2d 315, 320 (N.D.1964)):

> "Ordinarily, misrepresentations amounting to fraud which will avoid a contract must relate to past or present facts, and cannot consist of unfulfilled promises or predictions with respect to future events, especially where intent to deceive is absent. . . .

> "One of the essential elements of fraud is that there be a false representation of a material fact which either exists in the present or has existed in the past, and a mere expression of an opinion in the nature of a prophecy as to the happening or nonhappening of a future event is not actionable."

[¶ 24] The alleged misrepresentations in this case go well beyond mere puffery, sales talk, or opinion, and specifically averred past or present facts which Golden Eye allegedly knew to be untrue. For example, statements that Golden Eye had successfully drilled wells in Canada, that Golden Eye had a "permit man" in Bismarck actively securing drilling permits, that Golden Eye had acquired 7,000 mineral acres in Tyrone Township, that Golden Eye had operating permits in the Borgens' area, that Golden Eye had "operating/drilling control" over the sections where the Borgens' minerals were located, and that Dick McKee owned his own equipment and was very experienced in drilling horizontal wells are all statements of concrete, finite facts which allegedly induced the Borgens to enter into the leases with Golden Eye. The district court erred in holding these statements were not material to the Borgens' fraudulent inducement claims.

[¶ 25] We further note, although predictions of future events generally do not constitute fraud, *see Kary,* 541 N.W.2d at 706, our statutory definition of actual fraud expressly includes the making of a promise without any intention of performing it. N.D.C.C. § 9–03–08(4). In this case, the Borgens alleged Golden Eye made specific promises that it would drill and operate the wells itself, and would drill the Borgens' minerals first, with no intention or ability to perform that promise and with the specific intent to deceive the Borgens and induce them to lease their minerals to Golden Eye. The making of a promise with no intention of performing it with intent to induce another to enter into a contract is actual fraud which nullifies free consent to the contract. *Erickson v. Brown,* 2008 ND 57, ¶ 25, 747 N.W.2d 34; *Delzer v. United Bank of Bismarck,* 527 N.W.2d 650, 653 (N.D.1995).

## E

[¶ 26] The district court erred in concluding the alleged misrepresentations were either barred by the statute of frauds or were immaterial to the Borgens' fraudulent inducement claims. Accordingly, genuine issues of material fact remain as to whether Golden Eye made the alleged fraudulent misrepresentations and whether the Borgens were thereby induced to enter into the leases with Golden Eye. The district court therefore erred in granting summary judgment dismissing the Borgens' fraudulent inducement claims and quieting title in the leases in Golden Eye.

## IV

[¶ 27] Golden Eye contends, if the summary judgment on the Borgens' fraudulent inducement claims is reversed on appeal and remanded for trial, the Borgens are not entitled to a jury trial on their claims.

[¶ 28] A brief recap of the procedural history of the case is necessary to put this issue in context. The district court had

initially ruled the Borgens were not entitled to a jury trial on their fraudulent inducement and rescission claims and ordered a bench trial. The court subsequently granted motions for summary judgment concluding the fraudulent inducement claims were barred as a matter of law, dismissing the Borgens' action for rescission, and quieting title in the leases in Golden Eye, thereby rendering its jury trial ruling moot. The Borgens nevertheless brought a motion for reconsideration of the court's denial of a jury trial to preserve the issue for appeal. The district court subsequently entered an order granting the Borgens' motion for reconsideration and holding the Borgens would have been entitled to a jury trial if the fraudulent inducement and rescission claims had gone to trial.

[¶ 29] Our statutes provide two permissible procedures to accomplish rescission of a contract, one at law and one in equity. *See* N.D.C.C. §§ 9–09–04 and 32–04–21. In general, N.D.C.C. §§ 9–09–01 to 9–09–04 permit a unilateral rescission at law, and N.D.C.C. §§ 32–04–21 to 32–04–23 provide for a rescission in equity by adjudication. *American Bank Ctr. v. Wiest*, 2010 ND 251, ¶ 24, 793 N.W.2d 172. Whether an action for rescission is legal or equitable in nature depends upon the actions taken by the party prior to bringing the action. *Murphy v. Murphy*, 1999 ND 118, ¶ 12, 595 N.W.2d 571. If a party gives the other party notice of rescission and offers to restore the other party to the status quo in compliance with N.D.C.C. § 9–09–04, he may subsequently bring an action at law to confirm the prior unilateral rescission. If the party has not complied with the requirements of N.D.C.C. § 9–09–04, he may bring an action in equity under N.D.C.C. § 32–04–21 requesting the court order rescission of the contract.

We summarized the two separate statutory procedures in *Murphy*, at ¶ 13:

A plaintiff who elects to rescind a contract may choose to bring a claim in equity to cancel the contract under N.D.C.C. § 32–04–21. *Barker v. Ness*, 1998 ND 223, ¶ 10, 587 N.W.2d 183. "Alternatively, the plaintiff may bring an action at law based upon an election to rescind and offer to restore under N.D.C.C. § 9–09–04." *Id.* A plaintiff must give the defendant notice of the rescission and must promptly make an offer to restore to strictly comply with the requirements of a rescission action at law under N.D.C.C. § 9–09–04.

A rescission action at law is based upon the party's prior unilateral rescission, whereas an action in equity seeks to have the court terminate the contract and order restoration. *Murphy*, at ¶ 14.

[¶ 30] Whether a party is entitled to a jury trial in a rescission action depends upon whether it is an action at law under N.D.C.C. § 9–09–04 or a claim in equity under N.D.C.C. § 32–04–21. *Murphy*, 1999 ND 118, ¶¶ 12–14, 595 N.W.2d 571; *Barker v. Ness*, 1998 ND 223, ¶¶ 6, 21, 587 N.W.2d 183. There is no dispute that the Borgens' rescission claim in this case was based upon their prior unilateral rescission and was an action at law under N.D.C.C. § 9–09–04. The Borgens provided written notice of rescission to Golden Eye and made an offer to restore in compliance with the statute. Golden Eye does not allege that the Borgens failed to comply fully with the mandated statutory procedure. Accordingly, under this Court's prior holdings in *Murphy* and *Barker*, the Borgens are entitled to a jury trial in their rescission action at law under N.D.C.C. § 9–09–04.

[¶ 31] Golden Eye contends that *Kopperud v. Reilly*, 453 N.W.2d 598 (N.D. 1990), controls and indicates there is no

right to a jury trial in any rescission action, whether in equity or at law. In *Kopperud*, the county court ordered rescission of a land sale contract as part of an estate proceeding. There was no indication any party had provided notice of rescission or otherwise complied with N.D.C.C. § 9–09–04, and the objecting parties had argued only that they were entitled to a jury trial under provisions in the probate code. *Kopperud*, at 601. After concluding the probate statute did not apply and did not afford the parties a right to a jury trial, the court added in dicta:

We have long recognized that "rescission of a contract, whether the object of a suit in equity or an action at law, is governed by equitable principles." *Heinsohn v. William Clairmont, Inc.*, 364 N.W.2d 511, 513 (N.D.1985) (citations omitted). Absent express constitutional or statutory provisions, there is no right to a jury trial in suits of equity.

*Kopperud*, at 601.

[¶ 32] To the extent that *Kopperud* suggests there might not be a right to a jury trial in a rescission action at law under N.D.C.C. § 9–09–04, it has been abrogated by this Court's later holdings in *Murphy* and *Barker*. We conclude the district court did not err in holding the Borgens were entitled to a jury trial in their action at law for rescission.

## V

[¶ 33] The parties have raised numerous additional issues on appeal relating to other claims and counterclaims in the case. However, the core issue in the case, which will ultimately control or moot the other issues presented, is whether the Borgens were fraudulently induced to enter into the leases and were thereby entitled to rescission. If the Borgens were entitled to rescind because their consent was not freely given, the leases effectively cease to exist, see *Brash v. Gulleson*, 2013 ND 156, ¶ 13, 835 N.W.2d 798, and questions regarding quieting title, cancellation of the leases, and breach of the leases are all rendered moot. Under similar circumstances, this Court has recognized the broad, preemptive nature of rescission and held it was unnecessary to address any other claims relating to the contracts before resolution of the claim for rescission:

We also conclude that it is unnecessary to address the other issues raised by the parties regarding the effectiveness of the disclaimer of warranty and waiver of defense provisions of the lease agreements under the "close connectedness" doctrine, and § 51–07–09, N.D.C.C. If the plaintiffs prevail at trial on their claim for rescission of the lease agreements based upon fraud, these issues become moot. Therefore, addressing these issues before resolution of the plaintiffs' claim for rescission "would be tantamount to rendering an advisory opinion." *Stamper Black Hills Gold Jewelry, Inc. v. Souther*, 414 N.W.2d 601, 606 (N.D.1987).

*Krank v. A.O. Smith Harvestore Prods., Inc.*, 456 N.W.2d 125, 131 (citations omitted).

[¶ 34] We likewise conclude it is unnecessary to address the issues raised regarding cancellation of the leases or any alleged breach of the leases by the parties because those issues all will become moot if the leases are rescinded.

## VI

[¶ 35] We reverse the summary judgment quieting title in the leases in Golden Eye and dismissing all other claims and counterclaims of the parties, and we remand for further proceedings in accordance with this opinion.

[¶ 36]  GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.