Kevin M. NELSON and Julie R. Nelson, Plaintiffs,

v.

FARM CREDIT SERVICES OF NORTH DAKOTA, PCA, Defendant.

Case No. A4–05–012.

United States District Court, D. North Dakota, Northwestern Division.

Aug. 9, 2005.

Kevin M. Nelson, Kenmare, ND, pro se.

Richard P. Olson, Olson, Burns, Lee, Minot, ND, for defendant.

Julie Nelson, Kenmare, ND, pro se.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Defendant's "Motion to Dismiss Verified Complaint" filed on February 15, 2005. The Nelsons have filed a response opposing dismissal and seeking summary judgment in their favor. As the Defendant has cited to materials outside the pleadings—a supporting affidavit as well as bank records—the Court will treat their motion to dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Country Club Estates, L.L.C. v. Town of Loma Linda,* 213 F.3d 1001, 1005 (8th Cir.2000).[1] For the following reasons, the Defendant's motion is granted.

## I. *BACKGROUND*

On May 8, 2002, Kevin Nelson and Julie Nelson (hereinafter referred to as "the Nelsons") executed and delivered to Farm Credit Services of North Dakota, PCA (Farm Credit Services) a Promissory Note and Addendum to Note/Loan Agreement for $210,000 with interest at 5.50% per annum. *See* Defendant's Ex.'s A and B. The Addendum included, among other things, a cross-default provision. *See* Defendant's Ex. B. By its terms, the Note was secured by "[a]ll existing and future security agreements" and a mortgage of the same date. *See* Defendant's Ex. A. To secure payment, the Nelsons executed and delivered to Farm Credit Services a mortgage upon the following tracts or parcels of land lying in Ward County, North Dakota:

*Township 160 North, Range 89 West*

Section 18: Outlot 2 of the NE $^{1/4}$ NE $^{1/4}$

*See* Defendant's Ex. C. The mortgage was filed in the Office of the Recorder for Ward County on May 14, 2002.

On September 8, 2003, the Nelsons executed and delivered to Farm Credit Services a Promissory Note and Addendum to Note/Loan Agreement for $44,600 with interest at 4.75% per annum. *See* Defendant's Ex.'s D and E. As before, the Addendum included a cross-default provision. *See* Defendant's Ex. E. The note was secured by "[a]ll existing and future security agreements" and a mortgage dated August 18, 2003. *See* Defendant's Ex. D. To secure payment, the Nelsons executed and delivered to Farm Credit Services a mortgage upon the following tracts or parcels of land lying in Ward County, North Dakota:

*Township 160 North, Range 89 West*

Section 18: Outlot 2 of the NE $^{1/4}$ NE $^{1/4}$

*See* Defendant's Ex. F. The mortgage was filed in the Office of the Recorder for Ward County on August 21, 2003.

The Nelsons failed to make installment payments as agreed upon and defaulted on their obligation to Farm Credit Services. On January 21, 2005, Farm Credit Services sent the Nelsons a Notice Before Foreclosure regarding the mortgaged land. *See* Defendant's Ex. F.

On January 24, 2005, Kevin Nelson, acting pro se, filed the underlying action

---

1. When treating a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment, the Court is to afford the parties an opportunity "to present all material made pertinent to such a motion by Rule 56." Fed. R.Civ.P. 12(b). The Court previously in-formed the parties that the motion would be treated as such, and the parties have had an opportunity to supplement the record with additional documentation as needed. *See* Docket No. 22.

against Farm Credit Services in United States District Court for the District of North Dakota which includes the following factual allegations:

> This is an action for rescission of an illegal and void Mortgage and Note to certain real estate. This purported mortgage and note and the actions taken by Defendant certain unfair trade practices and predatory lending practices. Plaintiff also seeks recovery for damages for non-disclosure of Plaintiff's right to cancel, non-disclosure of certain Truth in Lending disclosures and Federal violations of numerous consumer rights.

> .    .    .    .    .

> Either before, during and/or after the settlement of the two loans, Defendant failed and/or refused to provide Plaintiff with copies of important documents, including the complete mortgage and note, which would explain their consumer rights, as well as other rights, including but not limited to, the right to cancel the contract and the Federal Truth in Lending Disclosures.

> Defendant also intentionally failed and/or refused to provide Plaintiff various disclosures that would indicate to Plaintiff that the contract entered into was void and illegal. Defendant's attorney and/or settlement officer did not furnish Plaintiff with copies of numerous important settlement documents, ever in the loans history, which would have concealed to the Plaintiff that the loan encompassed the Plaintiffs principal dwelling. Plaintiff was told by the settlement agent that the transaction only secured the farm related items and animals.

> Defendant or their agent did not properly disclose all mandated items to be disclosed under the Farm Credit Act. The Defendants herein and at all times relevant thereto, was under legal obligation as a fiduciary and had the responsibility of overseeing the purported loan consummation and make sure that the Plaintiffs received all mandated documentation and disclosures, before and after the purported loan transactions.

*See* Complaint, ¶¶ 4–5, 7–10. The Complaint includes seven "counts," summarized as follows:

> *Count One*—Farm Credit Services failed to make required disclosures under 12 U.S.C. § 2199, resulting in a loss of property and damages. *See* Complaint, ¶¶ 12–15.

> *Count Two*—Farm Credit Services failed to make required disclosures under 15 U.S.C. § 1635 *et seq.*, resulting in loss of property and damages. *See* Complaint, ¶¶ 16–21.

> *Count Three*—Farm Credit Services failed to make required disclosures under 15 U.S.C. § 1638 *et seq.*, resulting in loss of property and damages. *See* Complaint, ¶¶ 22–26.

> *Count Four*—Farm Credit Services failed to make required disclosures under 12 C.F.R. § 226 *et seq.*, resulting in loss of property and damages. As a result, the Plaintiff seeks to rescind the loan transaction. *See* Complaint, ¶¶ 27–31.

> *Count Five*—Farm Credit Services failed to advise the Plaintiff of his right to rescind the loan transaction under 12 C.F.R. § 226 *et seq.*, resulting in loss of property and damages. *See* Complaint, ¶¶ 32–35.

> *Count Six*—Farm Credit Services failed to make required disclosures under Regulation Z, 12 C.F.R. § 226 *et seq.*, resulting in loss of property and damages. As a result, the Plaintiff seeks to rescind the loan transaction. *See* Complaint, ¶¶ 36–39.

> *Count Seven*—Farm Credit Services committed fraud in its dealings with the

Plaintiff resulting in loss of property and damages. *See* Complaint, ¶¶ 40–50.

The Complaint was later amended to include Kevin Nelson's wife, Julie R. Nelson, as a plaintiff. *See* Docket No. 16. The Nelsons seek rescission of the loan transaction, damages in an amount up to $2,000 for each violation, damages in the amount of $500,000 for the overall violation, punitive damages in the amount of $500,000, return of the down payment and other payments, with interest, and costs. *See* Complaint, ¶¶ 51–57.

## II. *LEGAL ANALYSIS*

### A. *STANDARD OF REVIEW*

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Graning v. Sherburne County,* 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *COUNT ONE*

The Nelsons allege that Farm Credit Services failed to make required disclosures under 12 U.S.C. § 2199. It is well-established that the Agricultural Credit Act (12 U.S.C. § 2001 *et seq.*), did not create a private right of action. *Wagner v. PennWest Farm Credit,* 109 F.3d 909, 913 (3d Cir.1997); *Grant v. Farm Credit Bank of Texas,* 8 F.3d 295, 296 (5th Cir.1993); *Saltzman v. Farm Credit Services of Mid–America, ACA,* 950 F.2d 466, 467–69 (7th Cir.1991); *Zajac v. Federal Land Bank of St. Paul,* 909 F.2d 1181 (8th Cir.1990); *Griffin v. Federal Land Bank of Wichita,* 902 F.2d 22, 24 (10th Cir.1990); *Harper v. Federal Land Bank of Spokane,* 878 F.2d 1172, 1177 (9th Cir.1989); *Mendel v. Production Credit Ass'n of Midlands,* 862 F.2d 180 (8th Cir.1988). The same rule applies to its predecessor statute, the Farm Credit Act and the Farm Credit Amendments of 1985. *See Mendel v. Production Credit Ass'n of Midlands,* 862 F.2d 180 (8th Cir.1988); *Bowling v. Block,* 785 F.2d 556, 557 (6th Cir.1986); *Smith v. Russellville Production Credit Ass'n,* 777 F.2d 1544 (11th Cir.1985). Farmer-borrowers are limited to administrative review as their exclusive remedy under the Act. *Zajac,* 909 F.2d 1181, 1183. As a result, there are no genuine issues of material fact with regard to Count One and this count is dismissed.

### C. *COUNTS TWO AND THREE*

The Nelsons allege that Farm Credit Services failed to make required disclo-

sures under 15 U.S.C. §§ 1635 and 1638. The Nelsons seek money damages for losses incurred as a result of the alleged failure to disclose, and rescission of the loans. As noted by Farm Credit Services, 15 U.S.C. § 1601 *et seq.* is more commonly known as the Truth in Lending Act. Under 15 U.S.C § 1635, the borrower must be informed of his/her right to rescind in any consumer credit transaction in which a security interest is retained or acquired in the borrower's principal dwelling. 15 U.S.C. § 1635(a). Further, disclosures are required under 15 U.S.C. § 1638 of the Act, which applies to transactions other than under an open end credit plan.

The declared Congressional purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms so that the *consumer* will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the *consumer* against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (emphasis added). For that reason, the Truth in Lending Act has limited application. The Act applies only to "consumer" credit, which is defined as follows:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

15 U.S.C. § 1602(h). Conversely, the Truth in Lending Act excludes "[c]redit transactions involving extensions of credit primarily for business, commercial, or *agricultural purposes,* or to government or governmental agencies or instrumentalities, or to organizations." 15 U.S.C. § 1603(1) (emphasis added).

The term "agricultural purposes" includes the production, harvest, exhibition, marketing, transportation, processing, or manufacture of agricultural products by a natural person who cultivates, plants, propagates, or nurtures those agricultural products, including but not limited to the acquisition of farmland, real property with a farm residence, and personal property and services used primarily in farming.

15 U.S.C. § 1602(s). The Eighth Circuit has upheld dismissal in numerous cases under the "agricultural purposes" exemption. *See Felt v. Federal Land Bank Ass'n of Belle Fourche,* 760 F.2d 209, 210–211 (8th Cir.1985); *Farmer v. First Bank (N.A.)-Pipestone,* 760 F.2d 872, 874 (8th Cir.1985); *Aschoff v. Osmond State Bank,* 760 F.2d 201, 202 (8th Cir.1985); *Kurkowski v. Federal Land Bank of Omaha,* 750 F.2d 723, 724 (8th Cir.1984); *Wilson v. Prudential Ins. Co. of America,* 749 F.2d 502, 504 (8th Cir.1984); *Ator v. City Bank & Trust Co.,* 749 F.2d 498, 499–500 (8th Cir.1984); *K/O Ranch, Inc. by Olson v. Norwest Bank of Black Hills,* 748 F.2d 1246, 1248 (8th Cir.1984).

■ In classifying a loan under the Truth in Lending Act, courts often "examine the transaction as a whole and the purpose for which the credit was extended." *Tower v. Moss,* 625 F.2d 1161, 1166 (5th Cir.1980) (citing *Poe v. First Nat. Bank of DeKalb County,* 597 F.2d 895, 896 (5th Cir.1979); *Gallegos v. Stokes,* 593 F.2d 372, 375 (10th Cir.1979)); *Slenk v. Transworld Systems, Inc.,* 236 F.3d 1072, 1075 (9th Cir.2001); *Gombosi v. Carteret Mortgage Corp.,* 894 F.Supp. 176, 180 (E.D.Pa.1995); *Federal Deposit Ins. Corp. v. Hughes Development Co., Inc.,* 684 F.Supp. 616, 623 (D.Minn.1988). It has been said that "[n]either the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inqui-

ry." *Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir.1992). To that end, courts "look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone." *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir.1999). In the present dispute, the Nelsons characterize the loans in question as consumer credit transactions, whereas Farm Credit Services contends that the loans are agricultural in nature and, therefore, exempt under the Truth in Lending Act.

It is undisputed that prior to financing with Farm Credit Services, the Nelsons owed loans to Town and Country Credit Union. The Court has been provided with two notes in the amount of $165,940 and $50,000. The stated purpose of the $165,940 note was "[t]o consolidate debts at FCS and Credit Union and pay Clarence"[2] with security given in the form of "Machinery, Equipment, Livestock, Horses Colts." The stated purpose of the $50,000 note was "to cover operating costs and purchase of more horses" with security given in the form of "Farm Machinery/Equipment and Crops." The Nelsons also procured two vehicle loans with Town and Country Credit Union for a Ford 350 dual pickup and a Ford Expedition. Both vehicles are used primarily for agricultural business.[3] *See* Deposition of Kevin Nelson, pp. 18–23.

As previously discussed, the Nelsons later received two loans from Farm Credit Services in the amounts of $210,000 and $44,600. Most of the monies from these new loans were used to pay off the existing loans with Town and Country Credit Union. *See* Deposition of Kevin Nelson, pp.

11–12, 31, and 35. The two loan agreements with Farm Credit Services included the following inquiry: "Describe Your Loan Request–What's the purpose and amount of the loan?" *See* Defendant's Ex.'s H and I. In response, the Nelsons checked the box marked as "Other (please describe below)" on both agreements. *Id.* For a description, the Nelsons wrote in "TERM LOAN" on the $210,000 loan agreement, and wrote in "PURCHASE HORSES, BALER & HOPPER BIN" on the $44,600 loan. *Id.* The collateral offered for both loans included agricultural items such as machinery, vehicles, horses, colts, crops, crop insurance payments, and land.

Each signed promissory noted was accompanied by an Addendum to Note/Loan Agreement with additional terms and conditions. The following relevant-additional terms and conditions were included in the $210,000 Addendum to Note/Loan Agreement:

2. This loan is set up with 7 payments beginning on October 1, 2002 and annually thereafter. In addition to those payments borrowers agree to pay interest accrued on this loan monthly starting November 1st thru April 1st of each year when income is received from the borrower's PMU contract. Farm Credit Services needs to obtain annual authorization to disburse funds to the borrower from FSA. The borrower agrees to furnish an annual balance sheet, actual projected income and expense statements to Farm Credit Services to expedite the FSA authorization.

---

**2.** A portion of the $165,940 note went to Kevin Nelson's father, Clarence Nelson. It appears that Kevin Nelson was leasing farm equipment from his father. *See* Deposition of Kevin Nelson, p. 18.

**3.** The Ford pickup is shown as 75% for agricultural business and the Ford Expedition is shown as 70% for agricultural business. The Nelsons also own a 2004 Lincoln Towncar, but that vehicle has not been pledged as collateral to Farm Credit Services.

3. A Farm visit and inspection of the security shall be completed annually by the lender.

4. Borrower's will carry adequate crop and machinery insurance coverage as required by lender, with lender as loss payee.

5. No capital purchases in excess of $1,000.00, without FCS and FSA approval. This would also include the assumptions of liabilities or obligations of others.

6. Funds from the loan will be used as designated in the cash flow unless otherwise approved by lender and FSA.

7. Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 CFR part 1940, subpart G, exhibit M.

8. By November 1, 2002 or prior to purchasing any coming years inputs, Borrower agrees to provide Farm Credit Services with a written plan documenting the following:

   a) Crop inventory quantities and associated Marketing Plan.

   b) Scheduled debt repayment obligations.

   c) General operating expenses through January 1st.

   d) Family living expenses though January 1st.

Succeeding year input purchases will require written approval from Farm Credit Services after analyzing the borrowers Crop Inventory/Debt Servicing position.

9. If borrower's credit card balances exceed $15,000 at any time all notes will be in default and the operating budget will be discontinued.

*See* Defendant's Ex. B. The $44,000 loan included nearly identical terms and conditions in its accompanying Addendum to Note/Loan Agreement, with the exception of condition number two which read as follows:

2. This loan is a seven year term loan with a maturity date of 04–01–10 for the purchase of horses, baler and hopper bin. The borrower agrees to maintain accurate records of income and expense in a mutually acceptable format and to furnish those records as requested by Farm Credit Services.

*See* Defendant's Ex. E.

To further its position, Farm Credit Services offers the statements of John Stevenson, the Vice–President Credit for Farm Credit Services. *See* Affidavit of John Stevenson, ¶ 1. Regarding the loans in question, Stevenson attests that "Kevin Nelson and Julie Nelson indicated that the purpose of the loans were for agricultural purposes, namely for the purchase of horses, a baler, and a hopper bin, and for operating expenses." *See* Affidavit of John Stevenson, ¶ 7.

It is also noteworthy that Farm Credit Services is the lender in this matter. Farm Credit Services is part of a nationwide network of lending institutions that are owned and operated by their customers on a cooperative basis. *See* 12 U.S.C. § 2001 *et seq.* The network, known as the Farm Credit System, was established by the Farm Credit Act, as amended. 12 U.S.C. § 2001(a). The Farm Credit System is made up of and includes the Farm Credit Banks, the Federal land banks associations, the banks for cooperatives, and such other institutions as maybe made a part of the system. 12 U.S.C. § 2002(a). As part of the Farm Credit System, each entity is chartered by and subject to the regulation of the Farm Credit Administration. *Id.* The Farm Credit Administration

is an independent federal agency that is authorized to regulate the system. *Reimers v. Farm Credit Services AgCountry, ACA,* No. CIV. A3–00–168, 2001 WL 1820379, at *2 n. 2 (D.N.D. June 22, 2001).

Eligibility for Farm Credit System is statutorily limited by 12 U.S.C. § 2017, which provides as follows:

> The credit and financial services authorized in this subchapter may be made available to persons who are or become stockholders or members of the bank or associations in the district, and how are—
>
>> (1) bona fide farmers, ranchers, or producers or harvesters of aquatic products;
>>
>> (2) persons furnishing to farmers and ranchers farm-related services directly related to their on-farm operating needs; or
>>
>> (3) owners of rural homes.

In addition, the purposes for which extensions of credit may be given is likewise limited, to include (1) agricultural or aquatic purposes, (b) rural housing financing, and/or (3) farm-related services. *See* 12 U.S.C. § 2019.

In an attempt to fend off dismissal, the Nelsons assert that the loans "refinanced many credit card debts, financed two autos and encumbered [their] primary and secondary principles residences."[4] Plaintiffs Motion for Partial Summary Judgment and Brief in Support, ¶ 6. With that being said, the Nelsons contend that the loans were in fact consumer in nature, and therefore not exempt under the agricultural purpose exemption.

■ Based on the evidence, the Court expressly finds that the purpose for which Farm Credit Services lent the Nelsons money was agricultural in nature. When questioned, the Nelsons admitted that the purpose of the $44,600 loan was to purchase horses, a baler, and a hopper bin. That information is corroborated by the accompanying Addendum to Note/Loan Agreement which states the same. These ventures fall squarely within the definition of "agricultural purposes" as defined by the Truth in Lending Act.

Further, the evidence clearly shows that the $210,000 loan was similarly offered primarily for agricultural purposes. A substantial portion of that loan was used to pay off debts with Town and Country Credit Union; debts which stem from loans given to the Nelsons for farm business expenses and business vehicles. The affidavits offered by the Nelsons suggest that the loan may not have been used exclusively for agricultural purposes. For example, the Nelsons attest that monies from the $210,000 loan were used to pay off credit card debts. However, it must be noted that such a conclusion does not preempt dismissal. The correct inquiry is whether the primary purpose of the loan was agricultural in nature. Even assuming that monies were used to pay off credit card debts, Kevin Nelson admits that he used his credit cards to pay for farm operating expenses throughout this time period. *See* Deposition of Kevin Nelson, pp. 40–41. The loan agreement itself, as well as the accompanying Addendum to Note/Loan Agreement, evince that the loan was agricultural. The fact that Farm Credit Services is the lender and part of the Farm Credit System, further supports a finding that the loan was agricultural. Having carefully reviewed the evidence, the Court finds that Farm Credit Services

---

4. The Nelsons statement that the loans encumbered their primary residence appears to be inaccurate. The Nelsons primary residence is 620 4th Avenue NW, in Kenmare, North Dakota, and has been since November of 2003. *See* Deposition of Kevin Nelson, pp. 6. No mortgage has been taken on the Nelson's residence in Kenmare. *Id.* at 47–48.

lent the Nelsons money to aid them with operating costs for their farming operation. Even assuming some monies were used alternatively, it is clear that the primary purpose of the loans was agricultural. As a result, there are no genuine issues of material fact with regard to Count Two and Three and such counts are dismissed.[5]

### D. COUNTS FOUR, FIVE, AND SIX

The Nelsons allege that Farm Credit Services failed to make required disclosures under 12 C.F.R. § 226 *et seq.* known as Regulation Z. Specifically, the Nelsons reference 12 C.F.R. §§ 226.4, 226.5, 226.17, 226.18, and 226.23, which relate to disclosures and the right to rescind, and contend that the loans are rescindable. Regulation Z was "issued by the Board of Governors of the Federal Reserve System to implement the Truth in Lending Act. 12 C.F.R. § 226.1(a)." The stated purpose of Regulation Z is as follows:

> The purpose of this regulation is to promote the informed use of *consumer credit* by requiring disclosures about its terms and cost. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes. The regulation does not govern charges for consumer credit. The regulation requires a maximum interest rate to be stated in variable-rate contracts secured

by the consumer's dwelling. It also imposes limitations on home equity plans that are subject to the requirements of § 226.5b and mortgages that are subject to the requirements of § 226.32. The regulation prohibits certain acts or practices in connection with credit secured by a consumer's principal dwelling.

12 CFR § 226.1(b) (emphasis added). Consumer credit is defined as "credit offered or extended to a consumer primarily for personal, family, or household purposes." 12 C.F.R. § 226.2(a)(12). As with the Truth in Lending Act, Regulation Z does not apply to "[b]usiness, commercial, agricultural, or organization credit," to include "[a]n extension of credit primarily for a business, commercial or agricultural purpose." 12 C.F.R. § 226.3(a)(1). The official staff interpretations of Regulation Z, issued by the staff of the Division of Consumer and Community Affairs of the Federal Reserve Board, offer the following with respect to "agricultural purpose" as used in 12 C.F.R. § 226.3(a):

> An agricultural purpose includes the planting, propagating, nurturing, harvesting, catching, storing, exhibiting, marketing, transporting, processing, or manufacturing of food, beverages (including alcoholic beverages), flowers, trees, livestock, poultry, bees, wildlife, fish, or shellfish by a natural person engaged in farming, fishing, or growing crops, flowers, trees, livestock, poultry, bees, or wildlife. The exemption also applies to a transaction involving real

---

**5.** The Court would also note that the Nelsons claims for money damages are time barred under the Truth in Lending Act. The Act provides consumers with a private right of action for certain violations under 15 U.S.C. § 1640, but carries with it a one-year statute of limitations for actions for violations of the general disclosure requirements. 15 U.S.C. § 1640(e); *see K/O Ranch, Inc. by Olson v. Norwest Bank of Black Hills,* 748 F.2d 1246, 1248–49 (8th Cir.1984). Specifically, Section

1640(e) provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." As previously discussed, the loans in question were made on March 8, 2002, and September 8, 2003, respectively. *See* Defendant's Ex.'s A and D. Nelson filed his Complaint on January 24, 2005, well beyond the one-year statute of limitations. *See* Docket No. 1.

property that includes a dwelling (for example, the purchase of a farm with a homestead) if the transaction is primarily for agricultural purposes.

12 C.F.R. § 226, Supp. I.

For the reasons stated above, the Court finds that the loans in question were primarily for agricultural purposes and, therefore, exempt under Regulation Z. As a result, there are no genuine issues of material fact with regard to Counts Four, Five, and Six and such counts are dismissed.

### E. *COUNT SEVEN*

█ Finally, the Nelsons allege that Farm Credit Services committed fraud during the course of dealings. North Dakota law provides that "[a] person who has been fraudulently induced to enter into a contract may either rescind the contract, or retain the benefits of the contract and obtain damages for injuries from the fraud." *West v. Carlson*, 454 N.W.2d 307, 310 (N.D.1990); *see* N.D. Cent.Code §§ 9–03–01, 9–03–02, and 9–03–03. Fraud can be either actual or constructive. N.D. Cent.Code § 9–03–07. With respect to actual fraud, the law provides as follows:

Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

N.D. Cent.Code § 9–03–08. Alternatively, constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud.

N.D. Cent.Code § 9–03–09. "Although actions involving state of mind, such as fraud, are not usually suited for disposition by summary judgment, if a plaintiff fails to support his opposition to a summary judgment motion with sufficient facts to show that there is a genuine issue for trial, then, even in these cases, summary judgment is appropriate." *Kary v. Prudential Ins. Co.*, 541 N.W.2d 703, 706 (N.D.1996). "Fraud is never presumed but must be proved by evidence that is clear and convincing." *Id.* at 705.

█ The basis for this allegation of fraud is not altogether clear from the pleadings. More important, the Nelsons have failed to provide the Court with any evidence of fraud, either actual or constructive, on behalf of Farm Credit Services. The Nelsons signed the loan documents willingly. *See* Deposition of Kevin Nelson, pp. 39, 45. They were not "tricked" or "misled" into doing so, nor were they forced to sign the documents immediately. *Id.* at 47, 60, and 62. Both were given full opportunity to read through the documents and ask questions. *Id.* at 61. Further, the Nelsons had executed similar documents in the past with Farm Credit Services. *Id.* at 62. However, Kevin Nelson now admits that he did

not read the documents closely, nor understand them fully upon signing. *Id.* at 39 and 63. Nevertheless, the Nelsons have offered no evidence to suggest that Farm Credit Services attributed to their misunderstanding.

It should also be noted that the Nelsons have failed to respond to the Farm Credit Services' request for dismissal of Count Seven. While it is unclear whether the Nelsons have altogether abandoned their claim for fraud, they neglect to offer any evidence in the face of a motion to dismiss the claim. *See* Docket No. 9. The only support for their claim of fraud appears in the Complaint. *See* Docket No. 1.

In summary, the record reveals nothing to indicate any intent on .behalf of Farm Credit Services to deceive the Nelsons concerning the content of the two loan agreements. As a result, there are no genuine issues of material fact with regard to Count Seven and this count is dismissed.

## III. *CONCLUSION*

For the reasons set forth above, the Defendant's Motion to Dismiss is **GRANTED** (Docket No. 5). The Plaintiff's Motion for Partial Summary Judgment is **DENIED** (Docket No. 9).

**IT IS SO ORDERED.**